### In re SCHOTT BREWING CO.

### UNITED STATES for use of AURELIUS v. EBERHARDT et al.

No. 9840.

District Court, S. D. Illinois, S. D.

July 24, 1941.

Howard L. Doyle, U. S. Atty., and Marks Alexander, Asst. U. S. Atty., both of Springfield, Ill., Harold G. Baker, Leigh M. Kagy, and Baker, Lesemann, Kagy & Wagner, all of East St. Louis, Ill., for plaintiffs.

Louis F. Gillespie, Edmund' Burke, and Gillespie, Burke & Gillespie, all of Springfield, Ill., and Henry B. Eaton, of Edwardsville, Ill., for defendants.

ADAIR, District Judge.

This cause again coming on to be heard on this 24th day of July, A. D. 1941, upon the complaint, the answers of the defendants Henry W. Eberhardt and George A. Lochmann and the separate answer of defendant Hartford Accident and Indemnity Company, upon the evidence both oral and documentary taken and received in open court and upon the evidence both oral and documentary offered, received and admitted in evidence by virtue of the stipulation entered in between the parties upon the trial of said cause, upon the briefs submitted by the parties, and the court having heard the arguments of counsel and considered the briefs filed herein and having heretofore taken said cause under advisement and being now fully advised in the premises finds, makes and adopts the following Findings of Fact:

(1) The Court has full and complete jurisdiction over the subject matter of said cause and of all the parties thereto.

(2) By stipulation of the parties all petitions, pleadings, orders, reports, bonds, claims and other instruments and documents heretofore filed in the reorganization and bankruptcy proceedings in this Court or with the Referees in Bankruptcy of this Court exercising jurisdiction over the administration of the affairs of Schott Brewing Company, bankrupt, were to be and were considered as having been offered, received and admitted in evidence for all purposes in connection with this action and by virtue of said stipulation the testimony of the defendants Eberhardt and Lochmann and of one McMinn Baker heretofore taken before the Hon. Evan Howell, one of the Referees in Bankruptcy of this Court on May 22, 1940, May 31, 1940, and June 6, 1940, and the exhibits offered in

connection with said portions of said testimony were received in evidence in connection with the hearing of this cause.

(3) Schott Brewing Company was a corporation organized under the laws of the State of Illinois and had its principal office and place of business in the City of Highland in Madison County, Illinois. Said Schott Brewing Company was incorporated on May 2, 1932, and was originally authorized to issue 10,000 shares of common stock and was thereafter authorized to issue 14,000 shares of Class B stock and 20,000 shares of Class A stock.

(4) From and after the organization of said Schott Brewing Company and after the repeal of the Eighteenth Amendment to the Constitution of the United States said corporation entered into the brewery business in the City of Highland, Illinois, and continued in that business until January 17, 1939, the date of the filing of the reorganization proceedings hereinafter referred to. The business of said corporation was at all times operated at a loss which, as of February 1, 1939, amounted to the sum of $142,799.80.

(5) In the year 1938 factions developed among the directors and stockholders of said Schott Brewing Company. On April 8, 1936, a stockholders' suit for the appointment of a receiver to wind up the affairs of the corporation was filed in the Circuit Court of Madison County, Illinois, and was still pending at the time of the filing of the reorganization proceedings herein. In the summer and fall of 1938 a voluntary reorganization of the Schott Brewing Company was proposed and discussed among the creditors and the stockholders. The principal creditors of the corporation at that time were:

(a) Froedtert Grain and Malting Company, a corporation of Milwaukee, Wisconsin, which held a real estate mortgage of the land and buildings of the brewery made to secure the principal indebtedness of $70,000.

(b) First National Bank of Collinsville, Illinois, in the amount of approximately $10,000 which was evidenced by a promissory note, payment of which was secured by an assignment of a 99-year lease on certain underground caves located adjacent to the brewery and used in connection with its operation, and by an assignment of a conditional sales contract on a large bottling machine which had been purchased by Schott Brewing Company.

(c) State Bank of Collinsville in the amount of approximately $5,000 evidenced by a promissory note payment of which was secured by said assignment of said lease and said conditional sales contract which also secured the indebtedness of said First National Bank.

(d) Taxes in the sum of $3,000.

(e) Unsecured accounts payable in the amount of $28,822.02 and unsecured notes payable in the amount of $4,537.33, making the aggregate sum of the unsecured indebtedness, $33,359.35.

Total liabilities amounted to $115,097.56 as shown by the balance sheet attached to and made a part of the creditors' petition for corporate reorganization filed January 17, 1939.

The plan for the voluntary reorganization of Schott Brewing Company which was under consideration in the summer and fall of 1938 was prepared and sponsored by one Harry M. Wagner of Kirkwood, Missouri, who about that time went to Highland for the purpose of trying to work out some kind of deal between the creditors and stockholders. That plan of reorganization, a copy of which is included in and made a part of the creditors' petition for corporate reorganization filed January 17, 1939, attempted to provide for a working capital in the amount of $75,000, $25,000 of which was to be raised from the sale of stock of the Schott Brewing Company and the remaining $50,000 of which was to be raised by a loan to be open to public subscription. Said plan also provided for the employment of a reorganization manager for said corporation, for the extension of existing mortgages and the issuance of non-negotiable debenture notes without maturity to the unsecured creditors.

(6) On November 29, 1938, Froedtert Grain and Malting Company Inc., filed an action to foreclose its real estate mortgage against Schott Brewing Company in the Circuit Court of Madison County, Illinois.

(7) Shortly after the filing of said suit a conference was held in Edwardsville, followed by others in Collinsville and Highland, Illinois, in which the following persons participated:

(a) Selmar A. Bleish, Esq., an attorney of Edwardsville, Illinois, who had been retained in the summer of 1938 by one of the factions of directors and stockholders of the bankrupt and who at the

time of this conference was also representing Schott Brewing Company.

(b) Harry M. Wagner who was to be the reorganization manager and who was a member of the reorganization committee appointed by the directors of bankrupt and who took a leading part in the voluntary plan of reorganization and later in the reorganization proceedings in this court.

(c) The defendant Henry W. Eberhardt who was then and at all times thereafter, a stockholder, director and president of said First National Bank of Collinsville, Illinois, one of the secured creditors of bankrupt.

(d) William G. Burroughs, Esq., an attorney of Edwardsville, Illinois, who then represented Froedtert Grain and Malting Company and had filed the action to foreclose its mortgage together with two other representatives of the Froedtert Company.

(8) At said meetings it was agreed that:

(a) An involuntary proceeding for the reorganization of the bankrupt was to be filed in this court by First National Bank of Collinsville and the State Bank of Collinsville and by another creditor of debtor to be secured by its officers.

(b) The petition was to be prepared and filed by Mr. Bleisch who was to represent the petitioning creditors in said proceedings.

(c) Two trustees were to be appointed for the corporation and Charles Maurer who was the president of said State Bank of Collinsville and the defendant Henry W. Eberhardt who was the president of said First National Bank of Collinsville were to be appointed as said trustees and to act throughout the proceeding as reorganization trustees. Maurer and Eberhardt were selected because their banks were the largest creditors.

(d) A plan of reorganization was worked out and approved.

(e) The business of the brewery was to be continued pending the reorganization proceedings and Harry M. Wagner was to be put in charge of operations under the reorganization trustees at a salary of $300 per month.

(9) It was later discovered that Charles Maurer held stock in the Schott Brewing Company and thereupon the defendant George A. Lochmann was agreed upon as one of the reorganization trustees in lieu of said Charles Maurer. The defendant Lochmann was and is engaged in the real estate and insurance business in Collinsville, Illinois, as a member of a co-partnership doing business as Ambrosius and Lochmann and was and still is a stockholder and director of said State Bank of Collinsville.

(10) Some time prior to January 17, 1939, the involuntary petition for reorganization was prepared by Mr. Bleish who took it to Collinsville, had it executed by Charles Maurer, president and G. C. McCormick, cashier, of said State Bank of Collinsville; by the defendant Henry W. Eberhardt as president and William L. Kaemper, cashier of said First National Bank of Collinsville and by George Baech, d. b. a. City Electric Company, who upon being solicited by the defendants Eberhardt agreed to allow his name to be used as a petitioning creditor.

(11) On January 17, 1939, said involuntary petition for corporate reorganization of Schott Brewing Company was filed in the office of the Clerk of this Court in Springfield, Illinois. Said petition under the stipulation entered into at the trial comprises part of the record before the Court.

(12) On January 28, 1939, Schott Brewing Company filed an answer to said involuntary petition which, among other things alleged that its directors had disapproved of the plan of reorganization which Wagner prepared and sponsored, a copy of which is incorporated in the creditors' petition. Thereafter and some time prior to February 1, 1939, the form of an order appointing the defendants Eberhardt and Lochmann as reorganization trustees, authorizing them to hire Harry M. Wagner as general manager at a salary of $300 per month and providing for their powers and duties was prepared by Mr. Bleish. The names of the two trustees and of Harry M. Wagner were typed in the petition when it was prepared and the only blanks left in the order for the Judge to fill were the amount of bonds to be given by the trustees and the date of the order.

(13) On February 1, 1939, Messrs. Burroughs, Bleish, Wagner, Eberhardt and Lochmann appeared before the Hon. Charles G. Briggle, one of the Judges of this Court in his chambers at Springfield, Illinois, and presented to him the form of order which had been prepared by Mr. Bleish. The amount of the trustees' bonds was filled in as was the date of the order and the order was signed and entered by Judge Briggle.

(14) Said First National Bank of Collinsville, in which defendant Eberhardt was a stockholder and of which he was the president and a director and said State Bank of Collinsville in which defendant Lochmann was a stockholder and of which he was a director were then and there the holder of claims against the estate of the debtor which were secured by assignments of portions of the property and estate of debtor-bankrupt and the interests of said debtor-bankrupt were then and there adverse to debtor-bankrupt and to its unsecured creditors and said defendants were by virtue of their stock ownership in said banks, directly interested in said adverse claims, which interest was not disclosed to the court by said defendants or by anyone on their behalf.

(15) In the course of the conference with Judge Briggle, it was suggested that such legal advice and services as were required by the reorganization trustees for the performance of the duties imposed upon them by law and the orders of the court would be performed by Mr. Bleish and that no independent or disinterested counsel for said trustees should be appointed. No provision was made in the order entered on February 1, 1939, for such appointment of Mr. Bleish nor was he appointed as attorney for the said reorganization trustees by a written order at any time during the proceedings.

(16) Said order of February 1, 1939, among other things provided as follows:

(a) The amount of the bond of each of the defendants as reorganization trustees was fixed.

(b) The defendants Eberhardt and Lochmann as such reorganization trustees were authorized to operate the plant, property and business of the debtor, buy and sell for cash and credit the debtor's products and merchandise. Said defendants as such trustees were directed to pay all taxes which were then due or might become due thereafter and all the necessary current expenses of debtor.

(c) Defendants Eberhardt and Lochmann as such reorganization trustees were directed to forthwith investigate the accounts, conduct, property, liabilities and financial condition of debtor, the operation of its business and the desirability of the continuance thereof and were directed to prepare and submit at the earliest practicable date a report of said investigation and to submit a copy to each creditor and stockholder and to the Securities and Exchange Commission.

(d) Said defendants as such reorganization trustees were authorized but not directed, to appoint Harry M. Wagner as manager of the debtor's business on a month to month basis for a monthly salary to be determined by them which should not exceed the sum of $300.

(e) Full, detailed and special provision was made for the filing of reports by said defendants as reorganization trustees, paragraph 12 of said order being in words and figures as follows: "Said Trustees, promptly after sixty (60) days from the date of this order have elapsed, and at sixty (60) day intervals thereafter, shall file with the Clerk of the Court in which this proceeding is pending and have on file at the office of debtor in Highland, Illinois, reports setting forth, in some detail, the nature and extent of business carried on and performed by them, a summary of receipts and disbursements, balance sheets showing profits and losses, contracts cancelled and rejected, if any, new contracts, and any other matters which will reflect the manner in which they are operating and conducting the business, all of which reports shall, at all reasonable times, be open for examination by any party in interest; said Trustees also annually shall prepare and file with the Clerk of said Court a report showing receipts and disbursements and detailed profit and loss statement for the year, and true copy of which said annual report shall be mailed to all creditors and stockholders of Debtor within thirty (30) days after the close of the year, all reports to be certified as correct by the Trustees."

(17) Each of the defendants Eberhardt and Lochmann accepted said appointment as trustee of debtor-bankrupt and filed an official bond as trustee, and conditioned as required by law and each of said bonds was executed by defendant Hartford Accident and Indemnity Company as surety. Each of said bonds was conditioned and provided that if said defendants should obey such orders as the court might make in relation to said trust, and should faithfully and truly account for all moneys, assets and effects of the estate of said bankrupt, which should come into his hands and possession and should in all respects faithfully perform all his official duties as said trustee, then said obligations to be void; otherwise to remain in full force and virtue;

711

(18) Said official bonds and each of them were duly approved by this Court and filed on February 3, 1939.

(19) No record of the proceedings had and action taken by Judge Briggle was made and entered of record, other than said written order of February 1, 1939, which is made a part of the evidence taken at the hearing of this cause by virtue of said stipulations to which reference has heretofore been made.

(20) On February 2, 1939, defendants Eberhardt and Lochmann went to Highland, Illinois, delivered to the president of the debtor-bankrupt a copy of the order of February 1, 1939. They appointed Harry M. Wagner as manager of the bankrupt's property at a salary of $300 per month, the maximum salary authorized by the order and ordered him to continue the business of the bankrupt.

(21) Neither on February 2, 1939, nor at any time prior to March 1, 1940, when the debtor was adjudged bankrupt, did defendants Eberhardt and Lochmann or either of them make any investigation of the accounts, conduct, property, liabilities and financial condition of the bankrupt, the operation of its business and the desirability of the continuance thereof and at no time during the pendency of the reorganization proceeding did said defendants or either of them prepare and submit a report thereof to creditors, stockholders and the Securities and Exchange Commission as required by said order of February 1, 1939.

(22) On March 18, 1939, there was filed an unverified document or report signed by each of the defendants Eberhardt and Lochmann which among other things included a report of their receipts and expenditures covering the period beginning February 2, 1939, and ending March 15, 1939.

(23) The report so filed on March 18, 1939, was the only report filed by or on behalf of the reorganization trustees until subsequent to March 1, 1940, when debtor was adjudged bankrupt.

(24) The statement made in said report filed March 18, 1939, that a physical inventory had been made by said trustees, was not true, in that no such inventory or check of property and assets of debtor had been made by defendants or either of them. The account of receipts and expenditures for the period from February 2, 1939, to March 15, 1939, contained in said report does not show the losses actually sustained by the operations of said defendants.

(25) The court finds that from February 1, 1939, to May 2, 1939, there was a loss sustained by said estate, exclusive of depreciation and failure to obtain court orders for the sale of personal property, the sum of $47,917.71.

(26) That the loss sustained in the management of said corporation by said trustees from February 1, 1939 to June 30, 1939 was the sum of $16,965.93, and the said last mentioned loss should not be chargeable to said trustees in that they had not sufficient time to ascertain the condition of the trust estate or their inability to refinance said trust.

(27) During the period from May 2, 1932, the date of incorporation to February 1, 1939, the debtor had lost under its own management, including depreciation, $142,799.80.

(28) On April 26, 1939, a plan of reorganization for debtor which had been prepared by Wagner and Bleish was filed and said plan was approved for submission to creditors and stockholders on May 20, 1939. Neither Eberhardt nor Lochmann took any part in the drafting or formulating of said plan or performed any of the duties or obligations imposed upon them by law in connection with the same.

(29) Said plan, after modification, was confirmed by the order entered on August 29, 1939.

(30) Neither at the time said plan was filed, approved or confirmed could it have been consummated or carried into force and effect by reason of the losses sustained and indebtedness incurred by the defendants as reorganization trustees, but the Court was not informed at any of said times of the facts respecting said losses by said defendants or by anyone on their behalf.

(31) Said plan provided that the tax claim of the United States in the amount of $3,995.52, plus interest, should be paid as follows: $517 on or before November 22, 1939, and $200 on the 22nd day of each of the 11 months succeeding November, 1939, and the balance on November 22, 1940.

(32) The payment of $517 to the United States due November 22, 1939 was not made by said defendants nor were the $200 payments due respectively December 22, 1939, January 22, 1940, and February 22, 1940, made by said defendants. Said

trustees received from sales of goods during the month of November, 1939, $26,182.85, during the month of December, 1939, the sum of $27,898.98 and during the months of January and February, 1940, the aggregate sum of $4,925.62, which said receipts were diverted to other uses and purposes than the payments agreed to be paid to the United States in the plan.

(33) Defendants Wagner and Bleish in order to attempt to consummate said plan applied to the Reconstruction Finance Corporation for a loan in the amount of $50,000 and in that connection Wagner employed Donald M. Buckley, an attorney of Edwardsville, to prepare and file an application for said loan. The employment of Mr. Buckley was never reported to, approved or ordered by this Court.

(34) The agents of Reconstruction Finance Corporation at St. Louis, Missouri, indicated it would advance $25,000 of said loan provided that 50% participation by local banking institutions could be secured, that is to say, that said agents of Reconstruction Finance Corporation indicated it would advance $25,000 of said loan provided that local banking institutions would subscribe for and advance the sum of $25,000. The requirement of fifty (50) per cent participation by local banking institutions was at all times firmly insisted upon by the agents of Reconstruction Finance Corporation as a condition to the granting of the loan and this requirement was never modified or varied.

(35) As early as the middle of July, 1939, efforts were made by the defendants and others to secure the fifty per cent (50%) participation by local banking institutions from banks in Edwardsville, Collinsville, Highland and St. Louis. The local banking institutions refused to participate to the extent required by the Reconstruction Finance Corporation and within a week after July 14, 1939, defendants, as such trustees knew that it would be impossible to secure such participation by local banking institutions and knew that such participation had been refused by banks in Edwardsville, Highland and Collinsville.

(36) Defendants knew that before any profit could be made from the operations of the brewery the production of the plant had to be expended to at least 7,500 barrels of beer per month. During July and August of 1939 which are the best months for beer sales, said defendants were unable to produce by operations of the brewery more than one-half of that amount. Although defendants well knew that they could not expect to make a profit from the operations of the brewery at all times during the summer and fall and winter of 1939, they continued to operate the business until February 1, 1941, after which time they brewed no more beer but bottled up and sold the beer which was already on hand.

(37) During the course of the operation of the business said defendants sold large quantities of beer for sums less than it cost them to brew the same. During the operation of the business defendants, without any order of court whatsoever, sold and disposed of four or five carloads of barrels and other cooperage which were part of the assets of the estate and which were carried on the books at the sum of $13,094.31. Defendants received from the sale of said cooperage the sum of $2,189.50. Said sales were never reported to or confirmed by said court.

(38) On May 29, 1939, defendants signed and executed a check on their account in State and Trust Company Bank of Highland, Illinois, payable to the order of Meyer Supply Company in the sum of $897.60 to whom they were then indebted in a sum in excess of $897.60. Said check was delivered to Meyer Supply Company but when presented at the bank on which it was drawn payment was refused because the trustee did not have sufficient funds on hand to pay said check. Defendants, although they knew that the check had been protested for nonpayment, never made said check good although they received thereafter large sums in excess of the amount of said unpaid check.

(39) None of the creditors of debtor, except Froedtert Grain and Malting Company, Inc., State Bank of Collinsville and First National Bank of Collinsville, ever consented to the operation of the business of debtor by said defendants as reorganiation trustees nor was any creditor ever notified by said defendants or on their behalf of the losses sustained by said trustees in the operation of the business of debtor until after debtor was adjudged bankrupt.

(40) Subsequent to the filing of the proof of debt or claim on behalf of the United States in the sum of $3,593.52, defendants received from the operation of the business more than $250,000. Defendants and each of them acknowledged re-

ceipt, in writing, of a copy of said claim and knew of the said claim and the amount thereof at all times after its filing. No payments were made by said defendants on said claim.

(41) On February 16, 1940, a petition was filed by General Electric Company and other unsecured creditors which alleged that the plan of reorganization had not been consummated and prayed that Schott Brewing Company be adjudged bankrupt. On March 1, 1940, after hearing on said petition, upon notice to all parties in interest, Schott Brewing Company was adjudged bankrupt and Robert T. Moore of Springfield, Illinois, was appointed as receiver in bankruptcy. Said receiver, who duly qualified as such, under order of said court sold the property and assets of said debtor for the sum of $20,000, which sale, after due notice to all creditors, was confirmed and approved by an order of this Court entered March 19, 1940.

(42) On March 19, 1940, the cause was referred to Hon. Evan Howell, then one of the Referees in Bankruptcy of said court. The cause was administered under his supervision until January 2, 1941, when, upon the resignation of Referee Howell, said cause was referred for further administration to Hon. Clifford M. Blunk, one of the Referees in Bankruptcy of this Court.

(43) On April 23, 1940, at the first meeting of the creditors of said bankrupt, Frank W. Aurelius, the plaintiff on whose relation this action was instituted, was duly elected as trustee in bankruptcy of the estate of said Schott Brewing Company, bankrupt, and duly qualified as such trustee in bankruptcy and is now and has been at all times subsequent to April 23, 1940, the duly elected, qualified and acting trustee in bankruptcy of the property and estate of said Schott Brewing Company, bankrupt.

(44) Pursuant to an order fixing the time for the filing of claims and applications for compensation and reimbursement for expenses incurred subsequent to January 17, 1939, claims incurred subsequent to said date were filed in the total sum of $61,504.25 and applications for allowances and reimbursement of expenses were filed by defendants as such trustees and their attorneys, etc., amounting to $11,232, in an aggregate sum of $72,736.25.

(45) By orders entered by the Referee which were duly approved and confirmed by this Court, the amount of the allowances and reimbursement for expenses were reduced to the aggregate sum of $2,-582 and the claims incurred subsequent to January 17, 1939, were reduced to the sum of $37,223.61, in which aggregate amount the claims were duly allowed.

(46) Under orders duly made by said Referee and approved and confirmed by this Court the allowances made by the Referee had been paid in full and a dividend of 20% has been declared and paid to the creditors whose claims were incurred during the pendency of the reorganization proceedings and subsequent to January 17, 1939.

(47) The trustee in bankruptcy has on hand $5,253.36 and the only assets in his possession not heretofore liquidated is a note in the sum of $350 which if collected in full will increase the balance in his hands to the sum of $5,603.36 and after payment of costs of administration will be sufficient to permit the declaration and payment to said creditors whose claims were incurred during the pendency of the reorganization proceeding and after January 17, 1939, of an additional dividend which will not exceed 5% of the amount of said claims, making total dividends paid and in prospect for said creditors amounting in the aggregate to the sum of 25%. No funds are available, except from a recovery in this suit, to provide for the payment of the remaining 75% of said claims.

(48) Defendants Eberhardt and Lochmann filed applications for compensation in the sum of $3,900 and expenses of $431.-75. By an order duly entered by the Referee the said applications for allowance of compensation were denied in toto but said defendants were allowed their expenses in the amount of $431.75. Said defendants filed a petition for review of said order but prior to or immediately thereafter the filing of said petition were paid and accepted the amount of $431.75, the allowance made for expenses as aforesaid which said sum has been accepted and retained by said defendants. Said petition for review was consolidated for hearing with this suit.

(49) This court by the order entered on March 1, 1940, requested defendants Eberhardt and Lochmann to file, within ten days from said date, a full and complete report of all their accounts and doings as such trustees. Thereafter and on April 10, 1940, a report of cash receipts

714

and disbursements was filed by said defendants showing that total receipts of $310,356.61, cash disbursements of $310,177.53 and cash on hand February 29, 1940, of $179.28.

(50) On April 23, 1940, a supplementary report was filed by said defendants, supplementary to and expanding the details of the first report with respect to Office Cash Fund accounts.

(51) By an order of the Referee entered June 12, 1940, said reports were approved and said defendants discharged as trustees and the exceptions and objections filed to said reports by the bankruptcy trustee and by creditors were overruled, all however without prejudice to the enforcement of any personal liabilities against said Eberhardt and Lochmann or of any claims against the official bonds of said defendants as such trustees and the sureties thereon by any person or party in interest and the trustee in bankruptcy of the estate of said bankrupt. Said defendants filed a petition to review said portion of said order which was likewise consolidated for hearing with this suit.

(52) Said defendants and each of them have not obeyed the orders made by this court in relation to said trust and have not faithfully performed all of their official duties and the official duties of each of them in the following respects, to-wit:

(a) Said defendants, and each of them, wholly failed to make any investigation of the property or financial condition of debtor, particularly with respect to the operation of its business prior to the reorganization period and as to the desirability of the continuance of said business as required by said order of February 1, 1939.

(b) Said defendants, and each of them, failed to examine or make any investigation with respect to the balance sheet of debtor filed with the petition for corporate reorganization herein nor did they investigate the possibilities and costs of brewing beer or of selling said beer after it was brewed.

(c) Said defendants, and each of them, wholly failed to cause a disinterested appraisal to be made of the assets of the debtor as required by the statutes of the United States in such cases made and provided.

(d) Said defendants, and each of them, did not inventory or personally check or supervise the taking of an inventory of the property and assets of said debtor, as stated by them above their signature in the report filed March 18, 1939.

(e) Said defendants, and each of them, wholly failed to draft or formulate a plan of reorganization or to participate therein but delegated the formulation and preparation of such plan to persons with interests adverse to the interests of the debtor and of the unsecured creditors.

(f) Said defendants, and each of them, wholly failed to make any reports of their receipts and disbursements, of the results of the operation of business, the losses sustained by them, the new contracts and other matters involving the manner in which they were operating and conducting the business which said reports were due on April 2, June 1, July 31, September 30, November 29, in 1939 and on January 28, 1940.

(g) Said defendants, and each of them, knowing that the business was losing large sums of money knowingly and willfully concealed the facts from the court and knowingly and willfully refused and failed to file reports or otherwise give the court the information which was in their possession relative to their losing operations of the business.

(h) Said defendants and each of them, caused the properties of the debtor in their possession as trustees to be insured through the persons and firms in which they were either directly or indirectly interested.

(i) Said defendants, and each of them, operated the business long after it was apparent to any reasonable man that there was no reasonable prospect of the financial rehabilitation of the debtor or of the profitable operation of the business.

(j) Said defendants, and each of them, knowing that the business was losing money knowingly and willfully continued the business longer than a reasonable man would have done.

(k) Said defendants, and each of them, concealed from the court the adverse interests held by the banks of which they were stockholders and in which they had a direct interest and concealed from the court the facts which showed that they were not disinterested persons under the definition contained in the Chandler Act, 11 U.S.C.A. § 1 et seq.

(l) Said defendants, and each of them, sold or permitted to be sold valuable quantities of cooperage belonging to the estate

without notice and without securing an order of court as required by statute.

(53) By reason of the premises the estate of said Schott Brewing Company and the creditors thereof have sustained loss and damage in the sum of thirty thousand nine hundred fifty-one and 78/100 dollars ($30,951.78) as the direct and proximate result and consequence of said acts and omissions of said defendants and each of them.

(54) The court finds the issues in favor of plaintiff and assesses plaintiffs' damages at the sum of thirty thousand nine hundred fifty-one and 78/100 Dollars ($30,951.78).

### Conclusions of Law.

The Court makes and adopts the following conclusions of law:

■ A. The court has full and complete jurisdiction over the subject matter of said cause and of all the parties thereto.

■ B. Each of defendants Eberhardt and Lochmann upon his acceptance of appointment as trustees of debtor-bankrupt became and at all times thereafter was and remained charged with the duties imposed on him by law and the orders of this court and with the duty and obligation in connection with the property and the assets of debtor-bankrupt, and in his acts and dealings therewith to exercise the care and skill, oversight and control which a man of ordinary prudence would exercise in dealing with his own property and business.

C. Each of defendants Eberhardt and Lochmann failed to obey the orders made by this court in relation to said trust and failed to faithfully perform all of his official duties and to exercise the care and skill, oversight and control over the business of debtor-bankrupt and in his dealings therewith in the following respects, viz:

(a) Said defendants, and each of them, wholly failed to make any investigation of the property or financial condition of debtor, particularly with respect to the operation of its business prior to the reorganization period and as to the desirability of the continuance of said business as required by said order of February 1, 1939.

(b) Said defendants, and each of them failed to examine or make any investigation with respect to the balance sheet of debtor filed with the petition for corporate reorganization herein nor did they investigate the possibilities and costs of brewing beer or of selling said beer after it was brewed.

(c) Said defendants, and each of them, wholly failed to cause a disinterested appraisal to be made of the assets of the debtor as required by the statutes of the United States in such cases made and provided.

(d) Said defendants, and each of them, did not inventory or personally check or supervise the taking of an inventory of the property and assets of said debtor, as stated by them above their signature in the report filed March 18, 1939.

(e) Said defendant, and each of them, wholly failed to make any reports of their receipts and disbursements, of the results of the operation of business, the losses sustained by them, the new contracts and other matters involving the manner in which they were operating and conducting the business which said reports were due on April 2, June 1, July 31, September 30, November 29, in 1939 and on January 28, 1940.

(f) Said defendants, and each of them, wholly failed to draft or formulate a plan of reorganization or to participate therein but designated the formulation and preparation of such plan to persons with interests adverse to the interests of the debtor and of the unsecured creditors.

(g) Said defendants, and each of them, knowing that the business was losing large sums of money knowingly and willfully concealed the facts from the court and knowingly and willfully refused and failed to file reports or otherwise give the court the information which was in their possession relative to their losing operations of the business.

(h) Said defendants, and each of them, caused the properties of the debtor in their possession as trustees to be insured through the persons and firms in which they were either directly or indirectly interested.

(i) Said defendants, and each of them, operated the business long after it was apparent to any reasonable man that there was no reasonable prospect of the financial rehabilitation of the debtor or of the profitable operation of the business.

(j) Said defendants, and each of them, knowing that the business was losing money knowingly and willfully continued the business longer than a reasonable man would have done.

(k)   Said defendants, and each of them, concealed from the court the adverse interests held by the banks of which they were stockholders and in which they had a direct interest and concealed from the court the facts which showed that they were not disinterested persons under the definition contained in the Chandler Act.

(l)   Said defendants, and each of them, sold or permitted to be sold valuable quantities of cooperage belonging to the estate without notice and without securing an order of court as required by the statute.

D.   Defendants as such trustees were not justified under the duties and obligations imposed on them by law, in continuing operations of debtor-bankrupt's business after June 30, 1939, and wrongfully continued operation of said business after that date.

E.   By reason of the premises and estate of said Schott Brewing Company and the creditors thereof have sustained loss and damage in the sum of thirty thousand nine hundred fifty-one and 75/100 Dollars ($30,951.75) as the direct and proximate result and consequence of said acts and omissions of said defendants and each of them.

F.   Plaintiff is entitled to have and recover judgment against defendants in the sum of thirty thousand nine hundred fifty-one and 75/100 Dollars ($30,951.75).

The court further finds that the defendants are not entitled to recover on their separate claims for compensation for their services as such trustees and such claims are therefore denied.